UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURA ESCALANTE CABRA,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-01679-TL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

This matter is before the Court on Petitioner Laura Escalante Cabra's petition for writ of habeas corpus. Dkt. No. 1. Having reviewed the petition, Respondents' response (Dkt. No. 7), Petitioner's reply (Dkt. No. 10), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

## I.    BACKGROUND

**A.    Parties**

Petitioner Laura Escalante Cabra is a 26-year-old citizen of Colombia. Dkt. No. 1 at 5 ¶ 1. She is presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where she has been since on or about April 27, 2026. *See id.* at 6 ¶¶ 9–14.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Respondents[1] are Julio Hernandez, Seattle Field Office Director for U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"); Bruce Scott, warden of NWIPC; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Blanche, Attorney General of the United States; and DHS. *Id.* at 4 ¶¶ 10–14.

**B.      Petitioner's Immigration Background[2]**

On or about April 17, 2024, Petitioner entered the United States near El Paso, Texas, without being admitted or paroled into the country. *See* Dkt. No. 9-3 (Record of Deportable/Inadmissible Alien) at 3; Dkt. No. 8 (Ingram Decl.) ¶ 4. That same day, Petitioner encountered agent(s) of the United States Border Patrol, who arrested Petitioner for unlawful entry. *See id.* Petitioner was detained, then released the next day on an Order of Release on Recognizance ("OREC"). *See* Dkt. No. 9-2 (OREC). Petitioner asserts that the conditions of her release included: wearing an ankle monitor, which Petitioner wore for three months; taking pictures with an ICE app; home visits; and ICE office visits. Dkt. No. 2 (Petitioner Decl.) ¶ 7. Petitioner asserts that prior to 2026, she "had two visits at home and two at the office each month, and pictures due on Mondays." *Id.* ¶ 8. The home visits, however, were effectuated with video calls. *See id.* In 2026, the home and office visits were reduced to one each per month. *Id.* ¶ 9.

Upon her release on OREC, Petitioner moved to Washington. *Id.* ¶ 11. Petitioner avers that "[t]o the best of [her] knowledge, [she] complied with all of [her] check in requirements" except for one, on March 26, 2026. *Id.* ¶ 10. Consequently, Petitioner asserts, she "got a GPS

---

[1] As used in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

[2] Many of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Gary Ingram, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 8 (Ingram Decl.) ¶ 2). The Court makes no findings as to whether these are true and correct statements of fact.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

ankle monitor put back on[.]" *Id.* Respondents, however, assert that "Petitioner recorded multiple violations for missed biometric check ins, failed virtual home visits, failed virtual office visits, disabling location services, and missed tracker callbacks." Dkt. No. 8 ¶ 10. All told, Respondents claim that Petitioner violated the terms of her OREC 19 times. *Id.* ¶ 11.

In April 2025, Petitioner applied for asylum. Dkt. No. 2 ¶ 11; *see* Dkt. No. 8 ¶ 9.

On or about April 27, 2026, Petitioner reported to ICE in Tukwila, Washington, for an in-person check-in. Dkt. No. 2 ¶ 13; Dkt. No. 8 ¶ 11. At this check-in, Petitioner was handcuffed and detained. Dkt. No. 2 ¶ 14. Petitioner avers that "someone who worked for ICE told [her] that [she] was being detained because [she] had entered the country illegally, that was it." *Id.* According to Petitioner, "[n]o one mentioned any violations of [her] release." *Id.* Subsequent to her arrest, Petitioner was transported to NWIPC. *Id.* ¶ 15.

On May 6, 2026, Petitioner appeared before an immigration judge ("IJ") for a master calendar hearing. Dkt. No. 8 ¶ 13. Petitioner requested a continuance to enable her to retain counsel, which the IJ granted. *Id.*

On May 15, 2026, Petitioner filed the instant petition for writ of habeas corpus. Dkt. No. 1.

## II.    LEGAL STANDARD

### A.    Habeas Corpus Petition Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

**B.      Injunctive Relief Legal Standard**

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Factors three and four of the *eBay* analysis merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has held that a permanent injunction is appropriate where the party requesting it can demonstrate it is likely to suffer irreparable injury. *See City & County of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018) ("An injunction is appropriate when the party seeking relief demonstrates that . . . it is likely to suffer irreparable injury that cannot be redressed by an award of damages[.]").

### III.   DISCUSSION

**A.      Statutory Authority for Petitioner's Detention**

As a preliminary matter, Respondent argues that Petitioner is subject to mandatory detention under 8 U.S.C. §1225(b). Dkt. No. 7 at 3. But Respondents' own documentation contradicts their position. The record Respondents put before the Court clearly shows that Respondents have considered Petitioner to be detainable only under Section 1226, not Section 1225, since at least April 18, 2024, when DHS issued an "Order of Release on Recognizance" informing Petitioner that she was being subjected to terms of conditional release "[i]n accordance with section 236 of the Immigration and Nationality Act"—that is, 8 U.S.C. § 1226. Dkt. No. 9-5 at 2; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that a non-citizen released on an "Order of Release on

Recognizance" necessarily must have been detained and released under Section 1226). This is critical, because the only statutory exception to detention under Section 1225 is parole under 8 U.S.C. § 1182(d)(5)(A). In other words, if Petitioner were truly subject to mandatory detention under Section 1225, Respondents could never have released her under Section 1226. In any event, releasing Petitioner on OREC was a determination made by Respondents' own agent, and Respondents do not indicate that they erred in releasing Petitioner under 8 U.S.C. § 1226. The Court will not accept Respondents' arguments that Petitioner is not subject to Section 1226 when their own records demonstrate that she is. Taking the determinations of Respondents' agents at face value, the Court finds Petitioner is not detained under Section 1225 and, therefore, is not subject to mandatory detention.[3]

**B.      Grounds for Relief**

Petitioner seeks three forms of relief: First, Petitioner seeks a writ of habeas corpus ordering her immediate release from custody. Dkt. No. 1 at 15. Second, Petitioner seeks a permanent injunction that prevents "her re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that she is a flight risk of danger to the community and that no alternative to detention would mitigate those risks." *Id.* Third, Petitioner seeks a declaration from the Court that her "detention without an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment[.]" *Id.* The Court will address these in turn.

---

[3] In any event, "the fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (citation modified).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

1. **Constitutionality of Petitioner's Re-Detention**

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since

then. *See, e.g.*, *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3–4 (W.D. Wash. Mar. 18, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Respondents acknowledge the relevance of the *Mathews* analysis here. *See* Dkt. No. 7 at 5. Consistent with persuasive authority, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

### a.    The Private Interest Affected by the Official Action

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (holding that a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz*, 53 F.4th at 1199. Petitioner, unquestionably, has a strong interest in her own liberty. Petitioner asserts that she "gained a liberty interest in her continued freedom when DHS released her from detention in April 2024, and through her conduct she relied on her release." Dkt. No. 1 at 10. Petitioner argues that her activities while free—applying for asylum, applying for work authorization, and "building a life for herself"—established her "protected liberty interest." *Id.* at 10–11.

For their part, Respondents argue that "although Petitioner has a significant private interest in avoiding detention, that interest is substantially diminished by the governing statutory framework and by her own repeated violations of release conditions." Dkt. No. 7 at 6.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

Respondents, however, provide no authority to substantiate their assertions; they simply presume that this is the law without providing any case law, whether binding or persuasive, to substantiate their position. Courts in this District have rejected this unsubstantiated representation of the law, and this Court joins them here. *See, e.g.*, *Jianzhuang Yu v. Hernandez*, No. C26-1372, 2026 WL 1560581, at \*6 ("Respondents do not cite, nor is the Court aware of, any case law holding alleged violations of terms of conditions of release decrease one's interest in remaining free from imprisonment.").

But even if Respondents were correct, the assertion that Petitioner's alleged violations diminish her liberty interest does not negate Petitioner's reliance on her sustained freedom. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Moreover, Respondents' position is undermined by their conduct. Petitioner allegedly violated the conditions of her release 19 times.[4] The record provides no indication that Respondents opted to take any corrective action after the first 18 infractions. After the 19th, Petitioner was merely given a GPS ankle monitor. Dkt. No. 2 ¶ 10. If anything, Respondents' laxity in enforcing the conditions of Petitioner's release increased Petitioner's liberty interest—courts have found that the longer a noncitizen remains free, the greater their liberty interest. *See, e.g.*, *Jianzhuang Yu*, 2026 WL 1560581, at \*6; *Caglar v. Wamsley*, No. C26-787, 2026 WL 1123515, at \*4 (W.D. Wash. Apr. 24, 2026); *Harrington v. Albarran*, No. C26-1889, 2026 WL 800113, at \*6 (N.D. Cal. Mar. 23, 2026); *Nava v. Wamsley*, No. C26-459, 2026 WL 593097, at \*3 (W.D. Wash. Mar. 3, 2026).

---

[4] Respondents' evidence of Petitioner's alleged violations is hearsay. Moreover, it is contradicted by Petitioner's sworn declaration. *See* Dkt. No. 2 ¶ 10.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

Moreover, Respondents miss the forest for the trees. Respondents assert that Petitioner's "initial release on an OREC was a temporary, discretionary exercise of authority due to lack of bed space and was not a matter of right." Dkt. No. 7 at 6. But irrespective of Respondents' internal rationale for releasing Petitioner, and irrespective of Petitioner's conduct while released, the salient point is that *she was released*. That is to say, Petitioner was free, she had an interest in staying free, and Respondents' lack of bed space did not make her any less free.

Therefore, the first *Mathews* factor weighs in Petitioner's favor.

**b.    The Risk of Erroneous Deprivation of Liberty**

In this case, Respondents' agent determined that Petitioner could be released on her own recognizance. *See* Dkt. No. 9-5 at 2. As to Respondents' efforts to terminate Petitioner's release, there is nothing in the record demonstrating that Petitioner was provided advanced notice of her re-detention or the factual basis for it. *See* Dkt. No. 2 ¶ 13. Accordingly, the Court finds that the risk of erroneous deprivation of liberty is high. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high."). As other courts in this Circuit have found, a post-deprivation bond hearing under these circumstances "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d. 1316, 1324 (W.D. Wash. 2025) (citing *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")).

Respondents assert that the risk of erroneous deprivation is low, because "[t]he basis for Petitioner's re-detention was an extensive, verifiable administrative record of nineteen specific

ATD [alternatives to detention] violations spanning nearly two years, violations that were recorded contemporaneously by the BI Inc. contractor and uploaded to the EARM database in the ordinary course of business." Dkt. No. 7 at 6. The Court is unwilling to place as much faith in these records as Respondents do. First, Petitioner has asserted that, "to the best of [her] knowledge," she complied with all of her check-in requirements. Dkt. No. 2 ¶ 10. Second, the "report" of Petitioner's alleged violations is an unadorned list, reproduced on a blank sheet of paper with no official markings or letterhead; its provenance is unknown and unknowable. *See* Dkt. No. 8 at 5. Moreover, it is hearsay; "verifiable" is not the same as verified. Third, Respondents blithely expect the Court to trust the integrity of their system(s) on their word, referring to "BI Inc." and an "EARM database" without explaining what these are, what they do, or why the Court should consider them to be accurate and reliable sources of information. As another court in this District found under similar circumstances,

> ICE revoked Petitioner's release at a routine check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard, even though Petitioner asserts she believed she was compliant and was told only that she was being detained for "missing appointments." Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.

*Lnu v. Hermosillo*, No. C26-635, 2026 WL 691944, at *2 (W.D. Wash. Mar. 11, 2026). The Court agrees with the *Lnu* court that "[a] brief pre-deprivation custody hearing would have substantial value in testing the factual and legal basis for redetention." *Id.*

Therefore, the second *Mathews* factor weighs in Petitioner's favor.

      **c.**     **The Risk of Erroneous Deprivation and the Probable Value of Procedural Safeguards**

Respondents have not articulated any specific reason for re-detaining Petitioner without a hearing. Respondents argue that pre-deprivation hearings are unreasonable because they "would impose substantial administrative burdens on ERO, delay enforcement actions, and undermine the discretionary and revocable nature of release under the INA." Dkt. No. 7. None of this is persuasive. Nonspecific "substantial administrative burdens" is, without further explanation, a meaningless phrase. Without reference to how *much* delay, the Court has no way to evaluate whether these purported delays outweigh a noncitizen's substantial interest in remaining out of detention. Finally, Respondents' assertion that providing due process would "undermine the discretionary and revocable nature of release" is simply a complaint that Constitutional protections are merely procedural speedbumps that ought to be bypassed when the Government deems them too onerous to abide. That is not how due process works.

Although the Court acknowledges that providing Petitioner with a hearing before re-detaining her would require some expense of money and time, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Therefore, the Court finds that the third *Mathews* factor weighs in favor of Petitioner.

\*        \*        \*

In sum, all three *Mathews* factors weigh in favor of Petitioner. Respondents' re-detention of Petitioner violated her Constitutional due process protections, and the Court will order her immediate release.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 11

**C.      Injunctive and Declaratory Relief**

Having found that Petitioner's detention violates due process, however, the Court finds that Petitioner's requested injunctive and declaratory relief are not warranted here. Petitioner does not cite to or engage with the four-factor *eBay* analysis for injunctive relief, *see eBay*, 547 U.S. at 391, nor does she address the "constitutional and prudential concerns" "embrace[d]" by the Declaratory Judgment Act, *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998). Absent relevant argument that demonstrates Petitioner's entitlement to such relief, the Court will not provide it. *See Ibrahim v. Mullin*, No. C26-1467, 2026 WL 1487736, at *6 (W.D. Wash. May 28, 2026) ("To the extent this request seeks relief beyond the Court's findings articulated above, such as declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, Petitioner does not engage with the elements required for such relief or otherwise provide legal authority specifically addressing that relief. It is therefore denied.").

## IV.      CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

It is hereby ORDERED:

(1)      Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

    (a)      SHALL release Petitioner from detention **within twenty-four (24) hours** under appropriate conditions of release;

    (b)      SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12

(2)     Petitioner's request for injunctive relief is DENIED.

(3)     Petitioner's request for declaratory relief is DENIED.

(4)     Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 25th day of June 2026.

Tana Lin
United States District Judge